1

2

3

4

5

6

7

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

8   Bernadette Crump,                          )
                                              )          CIV 06-00607-TUC-FRZ (JM)
9                        Plaintiff,            )
                                              )
10  v.                                         )          **REPORT AND**
                                              )          **RECOMMENDATION**
11  Michael J. Astrue, Commissioner of Social  )
    Security,                                  )
12                                             )
                         Defendant.            )
13  _____ )

14          Plaintiff Bernadette Crump ("Plaintiff") brings this action pursuant to 42 U.S.C. §

15  405(g) and 1383 (c) (3) of the Social Security Act, seeking judicial review of the final

16  decision of the Commissioner of Social Security.  This Social Security Appeal has been

17  referred to the United States Magistrate Judge pursuant to Local Rule – Civil 72.2(a)(10) of

18  the Rules of Practice of this Court.  Based on the parties' cross motions of summary

19  judgement and the record submitted to the Court, the Magistrate Judge recommends that the

20  District Court, after its independent review, deny Plaintiff's Motion for Summary Judgment

21  [Doc. No. 8] and grant Defendant's Cross-Motion for Summary Judgment [Docs. No. 10-11].

22  **I.       Procedural Background**

23          On April 8, 2005, Plaintiff filed her application for disability insurance benefits under

24  Title II of the Social Security Act and for supplemental security income under Title XVI of

25  the Social Security Act, alleging a disability onset date of March 20, 2005. (Tr. 64-71).[1]  Her

26  application was denied initially and upon reconsideration.  (Tr. 25-36).  Plaintiff then

27

28          [1]"Tr." refers to the official transcript of the administrative record.

1    requested a hearing before an administrative law judge ("ALJ") which was held on May 9,

2    2006. (Tr. 196-207).  In a decision dated June 21, 2006, the ALJ found that Plaintiff was not

3    disabled. (Tr. 11-17).  Plaintiff requested review of the ALJ's decision  which was denied

4    by the Appeals Council on October 10, 2006.  (Tr. 3-6).  Accordingly, the ALJ's decision

5    became the final decision of the Commissioner of Social Security.  (Tr. 3-5).  Plaintiff was

6    not represented by counsel until she filed a complaint in this Court on December 6, 2006,

7    seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g) and 1383 (c) (3)

8    of the Social Security Act  [Doc. No. 1].

9    **II.      Record on Appeal**

10            **A.      Plaintiff's Testimony**

11            Plaintiff testified that she was born on February 12, 1961, is 5'5'' and weighs close to

12   187 pounds.  (Tr. 200). Her last day of work as a nurse's assistant was on March 20, 2005.

13   (Tr. 202).  She had to leave work because her blood pressure was too high and she was

14   retaining too much fluid.  *(Id.).*  Her doctor put her on blood pressure medication which

15   brought her blood pressure down but she did not go back to work because she was retaining

16   fluid and had painful arthritis. *(Id.).*  Her job required that she lift patients, some weighed 150

17   pounds and some 300 pounds. (Tr. 203).  On the day of the hearing, Plaintiff testified that she

18   could lift 100 pounds but not on a daily basis.  *(Id.).*

19            Plaintiff looked for easier work such as a cashier, bagger or at a day care but could not

20   secure a job because she did not have the experience.  *(Id.).*  When asked about her daily

21   activities, Plaintiff stated that she gets up at 5:00, takes a shower, eats, takes her medication

22   and does a little cleaning around the house.  *(Id.).*  Then she watches T.V. for about an hour

23   and listens to music for the rest of the day.  (Tr. 204).  Other than listen to music, Plaintiff

24   testified that she is always too tired to do much of anything.  (Tr. 204-05).  She does go

25   outside for fresh air but only at nighttime.  (Tr. 204).  She tries to stay out of the sun in the day

26   unless she has an appointment.  *(Id.).*  She does not own a car (Tr. 201) so when she needs

27   to get around she will take a bus or a cab or someone will pick her up.   (Tr. 204).  When

28

1 asked what she does for exercise, Plaintiff testified that she just does leg lifts but will walk
2 two blocks to the store. *(Id.).*

3 **B.    Medical Evidence**

4 **1.    The Plaintiff's Treating Physician**

5 In December of 2003, Plaintiff was hospitalized for two days at Northwest Hospital
6 due to a high blood pressure reading of 230.  (Tr. 85).

7 In August of 2004, Plaintiff was seen in the ER for pneumonia.  (Tr. 182). She was
8 placed on antibiotics and treated intensively. *(Id.).*  On August 30, 2004, Dr. Lund noted that
9 her lungs were now clear, her heart was regular and her blood pressure was controlled. *(Id.).*
10 He did prescribe some medication for vaginal symptoms possibly from the antibiotics. *(Id.).*

11 On October 7, 2004, Plaintiff was examined by Dr. Lund after complaining of sinus
12 drainage and a possible STD.  (Tr. 184).  Dr. Lund noted no vaginal discharge and no
13 inflamation or infection. *(Id.).*  Plaintiff's tonsils were enlarged but not infected, her lungs
14 were clear and her heart was satisfactory. *(Id.).*  He did not prescribe any medication but did
15 state that Plaintiff had walked quite a ways before coming into the office and has mild
16 hypertension, so he would monitor her in the future for hypertension. *(Id.).*

17 On March 14, 2005, Plaintiff saw Dr. Lund, complaining of right ear pain and lung
18 congestion. (Tr. 178).  Dr. Lund prescribed an antibiotic. *(Id.).*

19 On May 13, 2005 and again on May 26, 2005, Plaintiff saw Dr. Lund complaining of
20 right side chest pain and vaginal problems.  (Tr. 176-177).  She was given a different
21 prescription each time. *(Id.).*

22 August 15, 2005, when Plaintiff consulted with Dr. Lund, her blood pressure was
23 elevated and he added another medication to her present regime. (Tr. 174).  Dr. Lund
24 recommended that Plaintiff follow-up with a blood pressure evaluation. *(Id.).*  On September
25 15, 2005, Plaintiff was seen by Dr. Lund for a follow-up on her blood pressure and meds. (Tr.
26 171).  After noting that her blood pressure was in much better control, he advised her to
27 continue taking the same blood pressure medications. *(Id.).*

28

1    On October 11, 2005, Plaintiff had a pelvic exam by Dr. Lund. (Tr. 166). He noted

2  that all her laboratory studies were normal except for a blood sugar of 150 and a triglyceride

3  level of 215 which he attributed to Plaintiff having eaten a hamburger and fries before her

4  blood work. *(Id.).* Dr. Lund also noted left heel pain which he believed was a heel spur; he

5  recommended "watchful expectancy." *(Id.).*

6                **2.      The Disability Determination Services' Consulting Physician**

7    On July 13, 2005, Plaintiff was examined by Dr. Soo Hoo. (Tr. 148). Plaintiff

8  explained to Dr. Soo Hoo that she had been working as a nursing assistant but had to

9  discontinue her job because of her hypertension and fluid retention, resulting in her inability

10  to stand for prolonged periods of time. (Tr. 149). Plaintiff explained that she loves to cook,

11  dance, engage in conversation with her family and listen to music, but because of her lower

12  extremity swelling, she could not cook or dance much. *(Id.).*

13    Dr. Soo Hoo documented Plaintiff's complaints: swelling and stiffness of hands and

14  feet that was minimized by taking water pills; hypertension causing high blood pressure which

15  was adequately controlled with a treatment regimen; and a gynecological problem (tumors on

16  her uterus) for which she underwent a partial hysterectomy and suffered no further problems.

17  (Tr. 148-9).

18    Upon examination, Dr. Soo Hoo made the following observations: Plaintiff is 65" tall

19  and weighs 200 pounds; her abdomen is obese but soft and nontender without masses or

20  organomegaly; her heart demonstrates a regular rate and rhythm; her pulse is 80 and regular;

21  her respiratory rate is 16 and unlabored; there is synovial thickening at the MCP joints of both

22  hands but has normal range of motion of all major and minor joints; and neither her hands or

23  feet are swollen. (Tr. 150). Plaintiff's blood pressure was 160/110 and she was urged to

24  follow up with her treating physician. *(Id.).*

25    Dr. Soo Hoo noticed no problem with gait; Plaintiff was able to rise from a seated

26  position without difficulty, she ambulated to the exam area and was able to climb on and off

27  the examination scale without difficulty. (Tr. 150). Having noticed that Plaintiff had walked

28
                                              - 4 -

1   over an hour from her residence to her appointment at the clinic facility in 110 degree heat,

2   Dr. Soo Hoo arranged for Plaintiff to be driven home.  (Tr. 151).

3      Dr. Soo Hoo made the following Functional Recommendations:

4         Excluding consideration for age, gender, and body habitus, it is
      reasonable to conclude that individuals with comparable medical findings are

5      generally capable of the following work-related activities:

6         Lift/carry 20 pounds occasionally and 10 pounds frequently.  Stand/
      walk at least six hours per an eight-hour workday.  Sit at least six hours per an

7      eight-hour workday.  Exertional restrictions are based on the consideration for
      client's hypertension.  Climb stairs and ramps occasionally and never ladders,

8      ropes and scaffolding.  No restrictions are noted for stooping, crouching,
      kneeling and crawling.  No restrictions are noted for reaching, handling and

9      feeling because of the findings noted on her finder.  The client can occasionally
      finger.  No restrictions are observed for hearing, seeing and speaking.

10
   (Tr. 151).

11
      Dr. Soo Hoo electronically signed his report on July 18, 2005 at 9:22 p.m. adding:

12
         I am certifying, under penalty of perjury, that I have been authorized or

13      contracted by the Disability Determination Services to examine the claimant
      named in the attached, and produced a consultative examination report for that

14      claimant.  The report is accurate.  By checking on the "Agree" button below,
      I am certifying that I personally conducted, or personally participated in

15      conducting the consultative examination and have electronically signed the
      report contained within.

16
   (Tr. 153).

17
      The first residual functional capacity assessment ("RFC") was conducted on July 20,

18
   2005.  (Tr. 156-163).  It makes no mention of Plaintiff's obesity.  *(Id.)*.

19
      The Second RFC was conducted on November 15, 2005 and notes "obesity" as one of

20
   Plaintiff's primary diagnosis.  (Tr.188).  Handwritten notations on the RFC state:

21
      Clt is obese with a BMI of about 33.  She has mild hand OA & HTN uterine

22      fibroids are durationally non-severe.  A CE indicated capabilities as outline
      above.  Since the CE's MSS is consistent with the bulk of the evidence, it is

23      appropriate to adopt it.  In my medical opinion, the evidence supports
      capabilities as outlined above.  Thanks.

24
   (Tr. 189-190).

25
      **C.   ALJ's Findings and Decision**

26
      On June 21, 2006, the ALJ made the following findings:

27

28

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2.  The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 404.1520(b), 404.1571 *et seq*., 416.920(b) and 416.971 *et seq*.).

3.  The claimant has the following severe impairments: obesity and hypertension (20 CFR § 404.1521(c) and 416.9209(c))
    ...

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR, Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
    ...

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently.  She is able to sit, stand, and/or walk for about six hours in an 8-hour day.  She has no other exertional or non-exertional limitations.
    ...

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
    ...

7.  The claimant was born on February 12, 1961 and was 44 years old on the alleged disability onset date, which is defined as a younger individual 18-44 (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability due to the claimant's age (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c) and 416.966).
    ...

11. The claimant has not been under a "disability" as defined in the Social Security Act from March 20, 2005 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 13-17).

1   **III.    Standard of Review**

2          A court reviews the Commissioner's final decision to determine whether the factual

3   findings are supported by substantial evidence and whether the proper legal standards were

4   applied in weighing the evidence and making the decision. *Flake v. Gardner*, 399 F.2d 532,

5   540 (9th Cir. 1968).  "Substantial evidence" means such relevant evidence as a reasonable

6   mind might accept as adequate to support a conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679

7   (9th Cir. 2005).  Where evidence is susceptible to more than one rational interpretation, a court

8   must uphold the ALJ's conclusion. *Id.*

9          The standard of review in social security appeals is the same whether the case involves

10  a denial of disability insurance benefits or a denial of supplemental security income.  42

11  U.S.C. §§ 405(g) and 1383 (c)(3).  The definition of disability is also the same: whether the

12  claimant became unable to engage in substantial gainful activity by reason of any medically

13  determinable physical or mental impairment that can expect to result in death or which has

14  lasted or can be expected to last for a continuous period of at least twelve months.  20 C. F.R.

15  §§ 404.1505 and 416.905.

16  **IV.    Discussion**

17          **A.    Evaluation Process**

18          The Social Security Regulations establish a five-step sequential evaluation process to

19  be followed by the ALJ in a disability case.  20 C.F.R. § 404.1520.  At **step one** of the

20  process, the ALJ must determine whether the claimant is currently engaged in substantial

21  gainful activity; if so, a finding of non-disability is made and the claim is denied.  20 C.F.R.

22  § 404.1520(b).

23          When the claimant is not currently engaged in substantial gainful activity, the ALJ, in

24  **step two**, must determine whether the claimant has a severe impairment or combination of

25  impairments significantly limiting her from performing basic work activities; if not, a finding

26  of non-disability is made and the claim is denied.  20 C.F.R. § 404.1520(c).  A severe

27  impairment or combination of impairments exists when there is more than a minimal effect

28
                                                    - 7 -

1  on an individual's ability to do basic work activities.  20 C.F.R. § 404.1521(a); *Smolen v.*

2  *Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Basic work activities are "the abilities and

3  aptitudes necessary to do most jobs," including physical functions such as walking, standing,

4  sitting, lifting, pushing, pulling, reaching, carrying or handling, as well as the capacity for

5  seeing, hearing and speaking, understanding, remembering and carrying out simple

6  instructions, use of judgment, responding appropriately to supervision, co-workers and usual

7  work situations, and dealing with changes in a routine work setting.  20 C.F.R. § 404.1521(b).

8      At the **third step**, the ALJ must compare the claimant's impairment to those in the

9  Listing of Impairments, 20 C.F.R. § 404, Subpart P, App. 1; if the impairment meets or equals

10  an impairment in the Listing, disability is conclusively presumed and benefits awarded.  20

11  C.F.R. § 404.1520(d).

12      When the claimant's impairment does not meet or equal an impairment in the Listing,

13  in the **fourth step**, the ALJ must determine whether the claimant has sufficient RFC  despite

14  the impairment or various limitations to perform her past work; if so, a finding of non-

15  disability is made and the claim is denied.  20 C.F.R. § 404.1520(e).

16      When the claimant shows an inability to perform past relevant work, a prima facie case

17  of disability is established and, in **step five**, "the burden shifts to the Commissioner to show

18  that the claimant can perform some other work that exists in 'significant numbers' in the

19  national economy, taking into consideration the claimant's residual functional capacity, age,

20  education, and work experience."  20 C.F.R. § 404.1520(f).

21      **B.    Analysis**

22      Here, the ALJ resolved Plaintiff's claim at step five and found that Plaintiff "had the

23  residual functional capacity to perform the full range of light work."  (Tr. 17).[2]

24

25      [2]"Light work" involves lifting no more than 20 pounds at a time with frequent lifting or

26  carrying of objects up to 10 pounds, 20 C.F.R. §§ 404.1567(b), 416.967(b).  It normally  requires
    standing or walking about six out of eight hours, or about two-thirds of a work-day and includes

27  sedentary work, SSR 83-10.

28

1    Plaintiff raises three objections to the ALJ's findings and disability determination: 1)

2 that the ALJ erred by failing to consider her obesity in the entire sequential evaluation

3 process; 2) that the ALJ erred by failing to develop the record; and 3) that the ALJ's

4 evaluation of Plaintiff's credibility fell short of the substantial evidence standard.  Each of

5 these arguments is evaluated below.

6                          **1.      Consideration of Obesity**

7    Plaintiff argues that despite the ALJ's finding that Plaintiff's obesity was a severe

8 impairment, the ALJ committed legal error by failing to explicitly consider functional

9 limitations caused or made worse by Plaintiff's obesity.  In support, Plaintiff states that other

10 than referring to Plaintiff's treating physician's diagnosis of obesity, the word "obesity" rarely

11 appears again in the ALJ's decision.

12    The Social Security Rules specifically address the role of obesity in disability

13 assessments. Social Security Ruling ("SSR") 02-1p (2002) provides that obesity can be a

14 severe impairment if, when considered alone or combined with other impairments, it causes

15 more than a slight limitation on an individual's ability to perform basic work. *Id.* at 4. In

16 assessing the severity of obesity, the Commissioner has ruled that an "individualized

17 assessment of the impact of obesity on an individual's functioning" is necessary. *Id.*

18    At step two of the analysis, the ALJ in this case made the requisite findings.  He found

19 that Plaintiff had the severe impairments of obesity and hypertension and that the

20 "impairments cause significant limitation in the claimant's ability to perform basic work

21 activities."  (Tr. 13).

22    SSR 02-1p also provides that, if obesity is found to be a medically determinable

23 impairment, "any functional limitations resulting from the obesity" must be considered in the

24 RFC assessment. *Id*. at 7.

25    At step five of the analysis, the ALJ found that Plaintiff had the RFC "to lift and carry

26 20 pounds occasionally and 10 pounds frequently.  She is able to sit, stand, and/or walk for

27 about six hours in an 8-hour day.  She has no other exertional or non-exertional limitations."

28

1   (Tr. 14).  After setting out this finding in bold print, the ALJ provided two-plus pages of

2   single-spaced details to support this finding.  Twice, the ALJ refers to Plaintiff's obesity:

3   "Exam findings noted in the records from the treating physician include obesity and

4   hypertension" (Tr. 14); and "[s]he also has mild arthritis in the hands with some synovial

5   thickening of the joints and is obese with a body mass index of a least 31(Exhibits 2F &

6   1F/7)."  (Tr. 16).[3]

7           More often (seven times), the ALJ refers to Plaintiff's hypertension but that is because

8   Plaintiff herself attributed her inability to work to her symptoms of hypertension (fluid

9   retention and dizziness), arthritis and gynecological problems.  There is simply no evidence

10  in the record of any functional limitations as a result of Plaintiff's obesity that the ALJ failed

11  to consider.

12          Plaintiff also argues that the ALJ committed error by relying on a consulting

13  examiner's report that failed to consider obesity.  In support, Plaintiff refers to Dr. Soo Hoo's

14  report wherein he states that his opinions were made without consideration of "body habitus"

15  or body build, in other words, Plaintiff's obesity.

16          What Dr. Soo Hoo did in his report is simply track the language of  SSR 96-8P which

17  states: "[t]he RFC assessment considers only functional limitations and restrictions that result

18  from an individuals medically determinable impairment or combination of impairments,

19  including the impact of any related symptoms.  Age and *body habitus are not factors in*

20  *assessing RFC.*" SSR 96-8P, 1996 WL 374184, Introduction, paragraph 1 (S.S.A.) (emphasis

21  added).

22          Having included this language in the RFC is not to say that either the ALJ or Dr. Soo

23  Hoo ignored Plaintiff's obesity.  Plaintiff misunderstands the Agency's purpose in removing

24  obesity as a listed impairment. In 1999, the S.S.A. deleted Obesity from the listing of

25

26

27          [3]Exhibit 2F is the Physician's Teledictation and is found at Tr. 148.  Exhibit 1F/7 is a Case
    Development Sheet and is found at Tr. 146.

28                                                      - 10 -

1    impairments because its criteria  was not an appropriate indicator of listing-level severity and

2    did not represent a degree of functional limitation that would prevent an individual from

3    engaging in any gainful activity.  SSR 2-1P, 2000 WL 628049 (S.S.A.).  In other words, the

4    Agency wanted to ensure that weight alone was not assumed to impair functionality.  But after

5    an ALJ identifies obesity as a medically determinable impairment, as in the present case, then

6    any functionality limitations resulting from the obesity must be considered in the RFC

7    assessment.  SSR 2-1P, 2000 WL 628049, Policy Interpretation, paragraph 9 (S.S.A.).

8         As is evident from the ALJ's Findings and Dr. Soo Hoo's report, Plaintiff's obesity

9    was noted and was considered at all steps of the evaluation process.  In fact, the second RFC

10   is replete with references to Plaintiff's obesity.  But nowhere in the record was there anything

11   to suggest that Plaintiff's obesity affected her functionality or exacerbated her hypertension.

12   Her hypertension was adequately controlled by medication.  Her obesity did not affect her gait

13   or her mobility.   The ALJ was generous in his finding that because of her obesity and

14   hypertension, Plaintiff could not perform her past work as a nurse's assistant but could

15   perform other work in the economy.

16        Plaintiff also complains that Dr. Soo Hoo's report was not properly authenticated

17   because Dr. Soo Hoo signed the report electronically.  The Court finds no merit in this

18   argument.  Dr. Soo Hoo was simply following the directives found in the Social Security

19   Act's Program Operations Manual System, whose goals are to facilitate a paperless disability

20   process.  POMS DI 22510.015.  And the Secretary was simply following the directives of

21   Congress by adopting standards which enable health information to be exchanged

22   electronically . 42 U.S.C.A. § 1320d-2.  Both are consistent with the goals of improving the

23   operation of the health care system and reducing administrative costs.  *Id.*

24              **2.     The ALJ's Obligation to Develop the Record**

25        Plaintiff alleges error because the ALJ conducted only a 16 minute hearing and spent

26   less than five pages of the hearing transcript exploring Plaintiff's condition.  Plaintiff correctly

27   argues that an ALJ must be especially diligent in exploring all of the relevant facts when he

28                                              - 11 -

1   is dealing with an unrepresented claimant. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th

2   Cir. 2001).  But according to the Plaintiff, the *only* way the ALJ in this case could have

3   discharged this heightened duty was to seek out additional information bearing on the impact

4   of Plaintiff's limitations on her residual functional capacity.  That is not what case law

5   requires. Only when presented with ambiguous evidence or when the ALJ's own finding that

6   the record is inadequate to allow for proper evaluation of the evidence, is this heightened duty

7   to "conduct an appropriate inquiry" triggered.  *Id.*  An "appropriate inquiry" might involve

8   subpoenaing and questioning the claimant's physicians, continuing the hearing, or keeping

9   the record open after the hearing to allow supplementation of the record.  *Id*.  Here, the ALJ

10  was not confused by ambiguous evidence.  Nor did he believe that the record was insufficient

11  to allow him to render a decision.  And unlike the ALJ in *Tonapetyan,* where the medical

12  expert used phrases such as "difficult to say" and "somewhat depressed,"  the ALJ here did

13  not rely on medical testimony that was equivocal.  *Id.*

14              **3.      Credibility Determination**

15          Plaintiff argues that the ALJ misinterpreted much of the Plaintiff's testimony such that

16  his evaluation of her credibility was in error.  For example, Plaintiff's ability to perform some

17  minimal level of daily activity is no proof that she could function in a competitive work

18  environment; Plaintiff's ability to walk to the consultative examination is not evidence that

19  she is not disabled; and the absence of weight loss and muscle atrophy does not mean Plaintiff

20  is not suffering chronic pain.

21          "Questions of credibility and resolution of conflicts in the testimony are functions

22  solely of the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  The ALJ's

23  credibility findings must be supported by specific, cogent reasons.  *See Rashad v. Sullivan*,

24  903 F.2d 1229, 1231 (9th Cir. 1990).  When the credibility of pain testimony is at issue, and

25  there is medical evidence of an underlying impairment, the ALJ may not discredit a claimant's

26  testimony as to the severity of symptoms merely because they are unsupported by objective

27  medical evidence. *See Bunnell v. Sullivan*, 947 F.2d 341, 347-48 (9th Cir. 1991).  Rather, the

28

1  ALJ must identify what testimony is not credible and what evidence undermines the

2  claimant's complaints. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). The ALJ's findings

3  must be supported by clear and convincing reasons why a claimant's testimony of excess pain

4  is not credible and must be supported by substantial evidence in the record as a whole.

5  *Johnson v. Shalala,* 60 F3d. 1428, 1433 (9th Cir. 1995).

6  Here, the ALJ found that Plaintiff's statements concerning the intensity, duration and

7  limiting effects of her symptoms were "not entirely credible" (Tr. 14) and "not fully credible"

8  (Tr. 15).  These credibility findings, however, were not just general unsupported findings.

9  The ALJ provided specific and cogent reasons for discrediting Plaintiff's pain testimony.  He

10  noted: sporadic treatment with her primary care physician for hypertension without

11  complications; the lack of complaints to her primary care doctor of hand pain; exam findings

12  such as blood pressure readings that while not optimal, were generally in the normal to high

13  normal range; no evidence of peripheral edema and no swelling in her hands or feet; Plaintiff

14  received minimal conservative treatment consisting primarily of pharmacological and

15  palliative remedies; and her hypertension was more than adequately controlled with

16  medication.  (Tr. 14-16).

17  In reviewing the medical evidence as a whole, the ALJ determined that the clinical and

18  laboratory findings were disproportionate to the severity of pain reported by the Plaintiff.

19  *(Id.).*  The fact that Plaintiff was able to perform limited activities of daily living such as

20  driving, shopping and personal grooming *(Id.)* provided additional legitimate support to the

21  ALJ's credibility finding. *Bunnell*, 947 F.2d at 346. Plaintiff takes issue with the ALJ's

22  inclusion in his findings that Plaintiff traveled to her examination appointment by walking for

23  one hour and 15 minutes.  When read in the proper context, it is clear that the ALJ referred

24  to this fact as a way of supporting his finding that Plaintiff could perform daily living

25  activities in spite of her pain.  (Tr. 15).  These illustrations are exactly what case law requires.

26  *Tonapetyan*, 242 F.3d at 1148.

27

28

1    This Court finds that the ALJ's findings are both supported by substantial evidence and
2    free of legal error.

3    **V.    RECOMMENDATION FOR DISPOSITION BY THE DISTRICT JUDGE**

4    Based on the foregoing and pursuant to 28 U.S.C. § 636(b) and Local Rule 1.17(d)(2),
5    Rules of Practice of the United States District Court, District of Arizona, the Magistrate Judge
6    recommends that the District Court, after an independent review of the record, **DENY**
7    Plaintiff's Motion for Summary Judgment [Doc. No. 9] and **GRANT** Defendant's Cross-
8    Motion for Summary Judgment [Docs. No. 10-11].

9    This Recommendation is not an order that is immediately appealable to the Ninth
10   Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of
11   Appellate Procedure, should not be filed until entry of the District Court's judgment.

12   However, the parties shall have ten (10) days from the date of service of a copy of this
13   recommendation within which to file specific written objections with the District Court. *See*
14   28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure.
15   Thereafter, the parties have ten (10) days within which to file a response to the objections. If
16   any objections are filed, this action should be designated case number: **CV 06-00607-TUC-**
17   **FRZ**.  Failure to timely file objections to any factual or legal determination of the Magistrate
18   Judge may be considered a waiver of a party's right to *de novo* consideration of the issues.
19   *See United States v. Reyna-Tapia* 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*).

20   DATED this 7th day of July, 2008.

21

22   *Jacqueline Marshall*
     Jacqueline Marshall
23   United States Magistrate Judge

24

25

26

27

28