IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bernadette Crump, | No. CV 06-607-TUC-FRZ |
| Plaintiff, | **ORDER** |
| vs. | |
| Michael J. Astrue, Commissioner of Social Security, | |
| Defendant. | |

## I. BACKGROUND

Pending before the Court is Plaintiff's Motion for Summary Judgment pertaining to the denial of disability benefits by the Administrative Law Judge ("ALJ") in her case. Also pending before the Court is Defendant's Cross-Motion for Summary Judgment regarding the same denial of disability benefits.

United States Magistrate Judge Jacqueline Marshall issued a Report and Recommendation on July 7, 2008. In that Report and Recommendation, Magistrate Judge Marshall recommended denying Plaintiff's Motion for Summary Judgment and granting Defendant's Cross-Motion for Summary Judgment. The Report and Recommendation indicated that any party could file written objections to the Report and Recommendation within 10 days, and that responses to any objections were due within ten days. Plaintiff filed objections. Defendant did not file any objections.

## II. STANDARD OF REVIEW

The Court reviews de novo the objected-to portions of the Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The Court reviews for clear error the unobjected-to portions of the Report and Recommendation. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *see also Conley v. Crabtree*, 14 F. Supp. 2d 1203, 1204 (D. Or. 1998).

## III. DISCUSSION[1]

### A. Plaintiff's Objections

A review of Plaintiff's objections shows that she essentially raises the same arguments that were considered by Magistrate Judge Marshall and properly resolved in the Report and Recommendation.

Plaintiff argues that the ALJ failed to consider obesity in relation to the residual functional capacity determination. In this regard, Plaintiff stresses that any reliance on Dr. Soo Hoo's consulting examiner report was misplaced as the report excluded consideration of "body habitus" or the report was at least ambiguous as to whether it considered "body habitus" as it relates to obesity. Plaintiff also argues that the ALJ failed to develop the record especially as it pertained to the impact of Plaintiff's obesity on her ability to work. These issues were considered and appropriately resolved in the Report and Recommendation as follows:

> Plaintiff argues that despite the ALJ's finding that Plaintiff's obesity was a severe impairment, the ALJ committed legal error by failing to explicitly consider functional limitations caused or made worse by Plaintiff's obesity. In support, Plaintiff states that other than referring to Plaintiff's treating physician's diagnosis of obesity, the word "obesity" rarely appears again in the ALJ's decision.
> The Social Security Rules specifically address the role of obesity in disability assessments. Social Security Ruling ("SSR") 02-1p (2002) provides that obesity can be a severe impairment if, when considered alone or combined with other impairments, it causes more than a slight limitation on an individual's ability to perform basic work. *Id.* at 4. In assessing the severity of

---

[1] As Magistrate Judge Marshall's Report and Recommendation throughly discussed the relevant facts and law, the Court will not repeat that entire discussion; rather, the Court will only discuss the narrow issues specifically raised by Plaintiff's objections.

obesity, the Commissioner has ruled that an "individualized assessment of the impact of obesity on an individual's functioning" is necessary. *Id.*

At step two of the analysis, the ALJ in this case made the requisite findings. He found that Plaintiff had the severe impairments of obesity and hypertension and that the "impairments cause significant limitation in the claimant's ability to perform basic work activities." (Tr. 13).

SSR 02-1p also provides that, if obesity is found to be a medically determinable impairment, "any functional limitations resulting from the obesity" must be considered in the RFC assessment. *Id*. at 7.

At step five of the analysis, the ALJ found that Plaintiff had the RFC "to lift and carry 20 pounds occasionally and 10 pounds frequently. She is able to sit, stand, and/or walk for about six hours in an 8-hour day. She has no other exertional or non-exertional limitations." (Tr. 14). After setting out this finding in bold print, the ALJ provided two-plus pages of single-spaced details to support this finding. Twice, the ALJ refers to Plaintiff's obesity: "Exam findings noted in the records from the treating physician include obesity and hypertension" (Tr. 14); and "[s]he also has mild arthritis in the hands with some synovial thickening of the joints and is obese with a body mass index of a least 31(Exhibits 2F & 1F/7)." (Tr. 16).

More often (seven times), the ALJ refers to Plaintiff's hypertension but that is because Plaintiff herself attributed her inability to work to her symptoms of hypertension (fluid retention and dizziness), arthritis and gynecological problems. There is simply no evidence in the record of any functional limitations as a result of Plaintiff's obesity that the ALJ failed to consider.

Plaintiff also argues that the ALJ committed error by relying on a consulting examiner's report that failed to consider obesity. In support, Plaintiff refers to Dr. Soo Hoo's report wherein he states that his opinions were made without consideration of "body habitus" or body build, in other words, Plaintiff's obesity.

What Dr. Soo Hoo did in his report is simply track the language of SSR 96-8P which states: "[t]he RFC assessment considers only functional limitations and restrictions that result from an individuals medically determinable impairment or combination of impairments, including the impact of any related symptoms. Age and *body habitus are not factors in assessing RFC.*" SSR 96-8P, 1996 WL 374184, Introduction, paragraph 1 (S.S.A.) (emphasis added).

Having included this language in the RFC is not to say that either the ALJ or Dr. Soo Hoo ignored Plaintiff's obesity. Plaintiff misunderstands the Agency's purpose in removing obesity as a listed impairment. In 1999, the S.S.A. deleted Obesity from the listing of impairments because its criteria was not an appropriate indicator of listing-level severity and did not represent a degree of functional limitation that would prevent an individual from engaging in any gainful activity. SSR 2-1P, 2000 WL 628049 (S.S.A.). In other words, the Agency wanted to ensure that weight alone was not assumed to impair functionality. But after an ALJ identifies obesity as a medically determinable impairment, as in the present case, then any functionality limitations resulting from the obesity must be considered in the RFC assessment. SSR 2-1P, 2000 WL 628049, Policy Interpretation, paragraph 9 (S.S.A.).

As is evident from the ALJ's Findings and Dr. Soo Hoo's report, Plaintiff's obesity was noted and was considered at all steps of the evaluation process. In fact, the second RFC is replete with references to Plaintiff's obesity. But nowhere in the record was there anything to suggest that Plaintiff's obesity affected her functionality or exacerbated her hypertension. Her hypertension was adequately controlled by medication. Her obesity did not

affect her gait or her mobility. The ALJ was generous in his finding that because of her obesity and hypertension, Plaintiff could not perform her past work as a nurse's assistant but could perform other work in the economy . . .

Plaintiff [also] alleges error because the ALJ conducted only a 16 minute hearing and spent less than five pages of the hearing transcript exploring Plaintiff's condition. Plaintiff correctly argues that an ALJ must be especially diligent in exploring all of the relevant facts when he is dealing with an unrepresented claimant. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). But according to the Plaintiff, the *only* way the ALJ in this case could have discharged this heightened duty was to seek out additional information bearing on the impact of Plaintiff's limitations on her residual functional capacity. That is not what case law requires. Only when presented with ambiguous evidence or when the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, is this heightened duty to "conduct an appropriate inquiry" triggered. *Id.* An "appropriate inquiry" might involve subpoenaing and questioning the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record. *Id.* Here, the ALJ was not confused by ambiguous evidence. Nor did he believe that the record was insufficient to allow him to render a decision. And unlike the ALJ in *Tonapetyan,* where the medical expert used phrases such as "difficult to say" and "somewhat depressed," the ALJ here did not rely on medical testimony that was equivocal. *Id.*

*See* Report and Recommendation at 9-12.

Plaintiff also argues that the ALJ erred as he failed to support his adverse credibility finding with substantial evidence in the record. The Report and Recommendation properly resolved this issue and found in relevant part:

Plaintiff argues that the ALJ misinterpreted much of the Plaintiff's testimony such that his evaluation of her credibility was in error. For example, Plaintiff's ability to perform some minimal level of daily activity is no proof that she could function in a competitive work environment; Plaintiff's ability to walk to the consultative examination is not evidence that she is not disabled; and the absence of weight loss and muscle atrophy does not mean Plaintiff is not suffering chronic pain.

"Questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The ALJ's credibility findings must be supported by specific, cogent reasons. *See Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). When the credibility of pain testimony is at issue, and there is medical evidence of an underlying impairment, the ALJ may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. *See Bunnell v. Sullivan*, 947 F.2d 341, 347-48 (9th Cir. 1991). Rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). The ALJ's findings must be supported by clear and convincing reasons why a claimant's testimony of excess pain is not credible and must be supported by substantial evidence in the record as a whole. *Johnson v. Shalala,* 60 F3d. 1428, 1433 (9th Cir. 1995).

> Here, the ALJ found that Plaintiff's statements concerning the intensity, duration and limiting effects of her symptoms were "not entirely credible" (Tr. 14) and "not fully credible" (Tr. 15). These credibility findings, however, were not just general unsupported findings. The ALJ provided specific and cogent reasons for discrediting Plaintiff's pain testimony. He noted: sporadic treatment with her primary care physician for hypertension without complications; the lack of complaints to her primary care doctor of hand pain; exam findings such as blood pressure readings that while not optimal, were generally in the normal to high normal range; no evidence of peripheral edema and no swelling in her hands or feet; Plaintiff received minimal conservative treatment consisting primarily of pharmacological and palliative remedies; and her hypertension was more than adequately controlled with medication. (Tr. 14-16).
>
> In reviewing the medical evidence as a whole, the ALJ determined that the clinical and laboratory findings were disproportionate to the severity of pain reported by the Plaintiff. *(Id.)*. The fact that Plaintiff was able to perform limited activities of daily living such as driving, shopping and personal grooming *(Id.)* provided additional legitimate support to the ALJ's credibility finding. *Bunnell*, 947 F.2d at 346. Plaintiff takes issue with the ALJ's inclusion in his findings that Plaintiff traveled to her examination appointment by walking for one hour and 15 minutes. When read in the proper context, it is clear that the ALJ referred to this fact as a way of supporting his finding that Plaintiff could perform daily living activities in spite of her pain. (Tr. 15). These illustrations are exactly what case law requires. *Tonapetyan*, 242 F.3d at 1148.

*See* Report and Recommendation at 12-13. Accordingly, pursuant to the foregoing discussion, Plaintiff's objections are rejected.

### B. The Remaining Issues

As to the remaining issues that were not objected to by the parties, the Court has reviewed the entire record and concludes that Magistrate Judge Marshall's recommendations are not clearly erroneous. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Conley v. Crabtree*, 14 F. Supp. 2d 1203, 1204 (D. Or. 1998).

### IV. CONCLUSION

IT IS HEREBY ORDERED as follows:

(1) United States Magistrate Judge Marshall's Report and Recommendation (Doc. #17) is **accepted and adopted**.

(2) Plaintiff's motion for summary judgment (Doc. #7) is **denied** and Defendant's cross-motion for summary judgment (Doc. #10) is **granted**.

(3) This case is **dismissed**.

(4) The Clerk of the Court shall **enter judgment accordingly and close the file in this matter**.

DATED this 2nd day of September, 2008.

FRANK R. ZAPATA
United States District Judge